UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICAH R. KUNKLE,

    Plaintiff,

    v.        CAUSE NO. 3:21-CV-755-RLM-MGG

ANDREW HOLCOMB, et al.,

    Defendants.

OPINION AND ORDER

Micah R. Kunkle, a prisoner without a lawyer, filed a complaint about events that happened when he was at the Marshall County Jail in 2019 awaiting trial. The court determined that his complaint, deemed filed on October 4, 2021, when he placed it in the prison mail system, was likely untimely, but gave him a chance to file an amended complaint if he believed he could assert timely claims. ECF 24. He has filed an amended complaint that is ready to be screened. The court must review the merits of the amended complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

**(1) Cell Search on September 11, 2019**

Mr. Kunkle alleges that his cell was searched on September 11, 2019, at the behest of the prosecuting attorney of his criminal case to obtain evidence against him, and not for a penological purpose. ECF 27 at 6. He argues that legal mail to his attorney was confiscated and read. *Id.* This complaint was filed too late to challenge the September 11, 2019, cell search without some reason to toll (meaning to freeze in place) the statute of limitations. Mr. Kunkle asserts, without explanation, that the relevant date for purposes of the statute of limitations should be either October 7, 2019, November 12, 2019, or August 28, 2020, which would make his October 4, 2021, complaint timely. *Id.* at 6-7.

Mr. Kunkle has no basis to argue the statute of limitations should be tolled. He knew that the cell search occurred on September 11, 2019. Even if he didn't know the extent of the injury, he was still aware of an alleged violation of his rights. *See* Wallace v. Kato, 549 U.S. 384, 391 (2007) ("The cause of action accrues [when the wrongful act or omission results in damages] even though the full extent of the injury is not then known or predictable." (quotation marks omitted)). Jail records attached to his complaint establish that he filed a grievance about the search on September 16, 2019. ECF 27-1 at 2. The facts in the amended complaint flatly contradict any contention that Mr. Kunkle wasn't aware of the injury in September 2019.

Mr. Kunkle asserts a separate due process claim, alleging that his rights were violated after the cell search when all of his legal documents weren't returned and he didn't receive documentation of the confiscated items or a conduct report indicating

2

that contraband documents were found. ECF 27 at 8. He says that without this information, he couldn't discover the unlawful conduct until October 10, 2019, which would make this claim timely.

Mr. Kunkle's attempt to classify this as a due process claim is unpersuasive. It still stems from the cell search, and claims from the cell search are time barred. Even if the claim were timely, Mr. Kunkle has no federal due process claim. The Fourteenth Amendment provides that State officials shall not "deprive any person of life, liberty, or property, without due process of law." A state tort claims act that provides a method to seek reimbursement for the negligent loss or intentional deprivation of property meets the requirements of the due process clause by providing due process of law. Hudson v. Palmer, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy."). Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq*.) and other laws provide for state judicial review of property losses caused by government employees. Those laws provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See* Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). Even the destruction of legal materials is merely a property loss if the papers are replaceable. Hossman v. Spradlin, 812 F.2d 1019 (7th Cir. 1987). These alleged property losses don't state a due process claim upon which relief can be granted.

### (2) Denial of Access to the Courts

Mr. Kunkle's original complaint alluded to the denial of access to the courts regarding a tort claim, a § 1983 complaint about the conditions at the Marshall County Jail, and an appeal of the state court's decision in the guardianship case, In re R.J., No. 50C01-1904-GU-17 (Marshall Circuit Ct. filed April 8, 2019). *See* ECF 24 at 3-4. He didn't detail when these events happened or explain how a potentially meritorious case was prejudiced. *See* Marshall v. Knight, 445 F.3d 965, 968 (7th Cir. 2006).

Mr. Kunkle's amended complaint doesn't fix these problems. He specifies that two of the defendants seized from his cell a § 1983 complaint about the overcrowding conditions at the jail along with a PCR petition for Kunkle v. Indiana, No. 75C01-2110-PC-2 (Starke Circuit Ct. filed Oct. 22, 2021). ECF 27 at 10. He also complains that his appeal in the guardianship case was untimely because of defendants. The court assumes these legal documents were seized during the September 2019 cell search, which makes any claim untimely.

Even if the claims were timely, Mr. Kunkle doesn't show any prejudice, which is a necessary element of a claim for denial of access to the courts. Only if the defendants' conduct prejudiced a potentially meritorious legal claim has the right of access to the courts been infringed. Marshall v. Knight, 445 F.3d at 968. To state a claim, a plaintiff must "spell out, in minimal detail" the connection between the denial of access to legal materials and the resulting prejudice to a potentially meritorious legal claim. *Id.* The only specific prejudice Mr. Kunkle mentions is that his appeal in

the guardianship case was untimely. But public records show that the time to file any potential appeal of the guardianship case would have expired before the cell search occurred and thus there is no connection between the search and the untimely appeal. The chronological case summary in that case shows Mr. Kunkle was transported from the jail to attend a hearing on May 1, 2019, at which a judge appointed a guardian for the minor R.J., over Mr. Kunkle's objections. *See* In re R.J., No. 50C01-1904-GU-17 *(*Marshall Circuit Ct. hearing of May 1, 2019). Assuming an appeal of this decision was possible, Indiana gives 30 days for an aggrieved litigant to file an appeal. *See* Ind. R. App. P. 9(A). This period would have expired long before the cell search occurred in September 2019. Regarding the potential § 1983 case and PCR petition, the jail officials' alleged actions might have inconvenienced and delayed him, but Mr. Kunkle has not explained how he was prejudiced.

### (3) Conduct Reports

Mr. Kinkle's original complaint alleged that the chief jailer authorized and instructed his subordinate officers to place him in disciplinary segregation on false conduct reports at least 14 times, totaling more than 200 days in all. He alleged this was done to prevent him from filing grievances and assisting others with lawsuits. The court couldn't tell whether any claims related to this would be timely because there were no dates for these actions. *See* ECF 24.

In the amended complaint, Mr. Kunkle clarifies that he wants to assert a First Amendment retaliation claim, alleging that the 14 false conduct reports were done in retaliation for filing grievances, assisting inmates with their lawsuits, recruiting the

ACLU to come to the jail and speak with inmates regarding overcrowding conditions, and standing up for inmates when their rights were violated. ECF 27 at 11. He contends that he never got a hearing on those conduct reports, which resulted in more than 200 total days of segregation from November 2018 through November 2019. *Id.* He asserts that this was a continuing violation that didn't end until November 2019, and so his complaint is timely. *Id.* at 12-13.

Mr. Kunkle's amended complaint doesn't contain enough information for the court to determine whether he has plausibly alleged a timely retaliation claim. "To prevail on his First Amendment retaliation claim, [Mr. Kunkle] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Mr. Kunkle alleges generally that these events occurred from November 2018 through November 2019 but doesn't otherwise break down what happened, when it happened, who was involved, and why he believes these actions were retaliatory. He was told he needed to provide more information about the specific dates involved but he didn't do so. Moreover, his assertion that he did not receive a hearing on these conduct reports is contradicted later in the complaint when he asks for "expungement of disciplinary conviction or new hearing on all false conduct reports." ECF 27 at 14. This statement implies that there were hearings on the conduct reports; Mr. Kunkle simply disagrees with their

6

results. His vague assertion that his confinement in segregation was improper doesn't state a claim, and the amended complaint's inconsistent allegations make the court unwilling to allow him yet another chance.

### (4) Failure to Train

Finally, Mr. Kunkle adds in a new claim that the jail supervisors failed to train their subordinates and ensure that they were doing their jobs properly. "An allegation of a 'failure to train' is available only in limited circumstances," and this isn't such a case. Cornfield v. Consolidated High School Dist. No. 230, 991 F.2d 1316, 1327 (7th Cir. 1993). A failure to train claim requires that "the policymakers had acquiesced in a pattern of constitutional violations," *id.*, but Mr. Kunkle's complaint doesn't allege a pattern of constitutional violations. He can't proceed on this claim.

### (5) Conclusion

The amended complaint doesn't cure the problems identified in the first complaint. Any allegations that might be timely don't state a claim upon which relief can be granted. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." Abu-Shawish v. United States, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." Hukic v. Aurora Loan Servs., 588 F.3d 420, 432 (7th Cir. 2009). Mr. Kunkle has already been given an opportunity to correct the errors in the original complaint, and another chance isn't warranted here.

For these reasons, the court DISMISSES this case under 28 U.S.C. § 1915A.

SO ORDERED on June 13, 2022.

                                                    s/ Robert L. Miller, Jr.
                                                  JUDGE
                                                  UNITED STATES DISTRICT COURT