UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICAH R. KUNKLE, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 3:21-CV-755-JVB |
| ) | |
| ANDREW HOLCOMB, *et al.*, ) | |
|     Defendants. ) | |

## OPINION AND ORDER

Micah R. Kunkle, a prisoner without a lawyer, is proceeding in this case on three claims. First, he is proceeding "against Deputy Prosecuting Attorney Tami Napier and Marshall County Jail Officer Edward [Truty] in their individual capacities for compensatory and punitive damages for an unreasonable cell search on September 11, 2019, in violation of the Fourth Amendment[.]" (ECF 39 at 9). Second, he is proceeding "against Deputy Prosecuting Attorney Tami Napier and Marshall County Sheriff's Officer Les McFarland in their individual capacities for compensatory and punitive damages for chilling Mr. Kunkle's communication with his criminal attorney by reading attorney correspondence confiscated during the September 11, 2019, cell search in violation of the Sixth Amendment[.]" *Id.* Third, he is proceeding "against Marshall County Jail Officer Andrew Holcomb in his individual capacity for compensatory and punitive damages for placing him in disciplinary segregation for over 200 days between November 2018 and November 2019 without due process of law in violation of the Fourteenth Amendment[.]" *Id.* Deputy Prosecuting Attorney Napier filed a motion for summary judgment. (ECF 107). Kunkle filed a response, and Deputy Prosecuting Attorney Napier filed a reply. (ECF 117, 118, 124). Jail Officer Holcomb, Officer McFarland, and Jail Officer Truty (the "County Defendants") filed a separate motion for summary judgment. (ECF 111). Kunkle filed a response, and the County Defendants

filed a reply. (ECF 127, 128, 129, 130). The summary judgment motions are now fully briefed and ripe for ruling.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc*., 621 F.3d 651, 654 (7th Cir. 2010).

## ANALYSIS

### A. Fourth Amendment claim against Deputy Prosecuting Attorney Napier and Jail Officer Truty

Kunkle is proceeding against Deputy Prosecuting Attorney Napier and Jail Officer Truty "for an unreasonable cell search on September 11, 2019, in violation of the Fourth Amendment[.]" (ECF 39 at 9). Both defendants argue summary judgment is warranted in their favor because this claim is time-barred by the statute of limitations.

2

Section 1983 provides a private remedy for protecting constitutional rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "Section 1983 'is not itself a source of substantive rights' but merely provides a 'method for vindicating federal rights elsewhere conferred.'" *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). In a Section 1983 case, courts look to the personal injury laws of the state where the injury occurred to determine the statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985). In Indiana, the statute of limitations applicable to § 1983 suits is two years. *Behavioral Institute of Indiana, LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005). "While state law determines the length of the limitations period, federal law determines the date of accrual of the cause of action." *Id*. For § 1983 purposes, a claim accrues when the plaintiff "knows or should know" that his constitutional rights have been violated. *Id.* Thus, in the context of an allegedly improper search and seizure, the Seventh Circuit has held that the cause of action accrues when the search at issue took place. *Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir. 1995) ("A cause of action under § 1983 for an improper arrest or search accrues at the time of the arrest or search.").

The defendants provide evidence showing the following facts. In 2018, Kunkle and Dawn Walter were both charged with crimes related to injuries to Walter's child and held as pretrial detainees in the Marshall County Jail. (ECF 107-2 at 2). On June 27, 2019, Walter accepted a plea agreement where she would testify against Kunkle at his trial. (ECF 107-4 at 6). On September 11, 2019, Jail Officer Truty received information from other jail staff that Kunkle had been communicating with Walter via letters in violation of jail policy. (ECF 113-2 at 2). Later that day, Jail Officer Truty conducted a search of Walter's cell and recovered letters from Kunkle to Walter that violated jail policy. *Id.* Jail Officer Truty then conducted a search of Kunkle's cell and seized correspondence that seemed to be exchanged between Walter and Kunkle. *Id.*

Deputy Prosecuting Attorney Napier came to suspect Kunkle had been communicating with Walter after listening to a non-privileged phone call between Kunkle and his mother. (ECF 107-2 at 3). She discussed this with Officer McFarland, and Officer McFarland prepared a search warrant to review the correspondence that had been removed from Kunkle's cell by Jail Officer Truty for evidence of witness tampering. *Id.* at 4; (ECF 107-4). Officer McFarland presented the search warrant to a judge, and the judge issued the search warrant on September 12, 2019. (ECF 107-2 at 4; ECF 107-5 at 2). The warrant authorized the letters Jail Officer Truty recovered from Kunkle's cell to be searched due to concerns of witness tampering. *Id*. Officer McFarland executed the search warrant and delivered an envelope containing the correspondence recovered from Kunkle's cell to the prosecutor's office. (ECF 107-2 at 4). Deputy Prosecuting Attorney Napier gave the envelope to her paralegal and the Felony Pretrial Diversion Coordinator to identify, remove, and secure anything that resembled attorney-client communications. *Id*. Anything that was arguably an attorney-client communication was placed in a separate envelope and sent to Kunkle's attorney, and was not reviewed by Deputy Prosecuting Attorney Napier. *Id*.

On September 16, 2019, Kunkle filed a grievance at the jail claiming that Jail Officer Truty performed a shakedown of his cell and took his legal documents. (ECF 113-1 at 106). On September 17, 2019, Kunkle's criminal counsel Todd Wallsmith filed a "Motion to Remove Prosecuting Attorney, Motion to Suppress" in Kunkle's criminal proceedings asserting he'd been informed by Kunkle that Marshall County Jail employees had entered his cell and confiscated papers protected by attorney-client privilege. (ECF 113-5). In this motion, Wallsmith argued Deputy Prosecuting Attorney Napier had reviewed the privileged documents and requested that she be disqualified from Kunkle's criminal case. *Id.* The state filed a response to this motion, explaining Officer McFarland had seized the documents pursuant to a search warrant and any

privileged communications were not reviewed by Deputy Prosecuting Attorney Napier. (ECF 113-6). On September 19, 2019, the Marshall Superior Court entered an order denying Kunkle's request to disqualify Deputy Prosecuting Attorney Napier from his case but granting his request to suppress any communications he sent to his attorney or any information gleaned from those documents from being used at trial. (ECF 113-7). On the first day of Kunkle's criminal trial on September 24, 2019, Wallsmith renewed his "Motion to Remove Prosecuting Attorney, Motion to Suppress" in open court and argued the prosecutor's office had confiscated confidential communications between him and Kunkle. (ECF 113-8 at 4-7). The court reaffirmed its order denying the motion in part and granting the motion in part. *Id.* at 7. Because neither party disputes these facts, the Court accepts them as undisputed.

The defendants argue Kunkle's Fourth Amendment claim is time-barred because he filed this lawsuit on October 4, 2021, which is more than two years after the September 11, 2019, search. (ECF 108 at 3-5; ECF 112 at 3). Kunkle responds that this claim is timely because it did not accrue until August 2020, when he received the Clerk's Record for his direct criminal appeal and first saw the state's response to his attorney's motion to suppress. (ECF 117 at 3-4). Specifically, Kunkle argues he believed the search of his cell was a routine security search at the time it happened, and only learned the seized documents had been provided to Deputy Prosecuting Attorney Napier when he reviewed the Clerk's Record in August 2020. *Id.*

Here, the undisputed facts show that Kunkle's Fourth Amendment claim is time-barred, as he filed this lawsuit more than two years after the claim accrued. Specifically, even assuming Kunkle's Fourth Amendment claim did not accrue at the time of the search on September 11, 2019, because Kunkle did not know at the time of the search that it was unlawful, it is nevertheless undisputed that: (1) Kunkle's attorney was informed of the search by Kunkle on September 16;

5

(2) Kunkle's attorney filed a motion to suppress and disqualify Deputy Prosecuting Attorney Napier on September 17; (3) the state responded to the suppression motion on September 18, conceding the attorney-client communications were seized from Kunkle's cell and sent to the prosecutor's office; and (4) Kunkle's attorney renewed his motion to suppress and disqualify Deputy Prosecuting Attorney Napier in open court during Kunkle's trial on September 24, 2019. Even accepting as true Kunkle's assertion that his attorney filed the motion to suppress without his knowledge, Kunkle knew or should have known of the potential constitutional violation when the motion to suppress and disqualify Deputy Prosecuting Attorney Napier was litigated in his presence during his trial. *See Goodhand v. U.S.*, 40 F.3d 209, 212 (7th Cir. 1994) (the statute of limitations begins to run "upon the discovery of the injury, even if the full extent of the injury is not discovered until much later."). Thus, because the undisputed facts show Kunkle's Fourth Amendment claim accrued no later than September 24, 2019, and he didn't file this lawsuit until October 2021, the undisputed facts show this claim is time-barred. Summary judgment is therefore warranted in favor of the defendants on this claim.

### B. Sixth Amendment claim against Deputy Prosecuting Attorney Napier and Officer McFarland

Kunkle is proceeding against Deputy Prosecuting Attorney Napier and Officer Les McFarland "for chilling Mr. Kunkle's communication with his criminal attorney by reading attorney correspondence confiscated during the September 11, 2019, cell search in violation of the Sixth Amendment[.]" (ECF 39 at 9). The defendants argue this claim is likewise time-barred, as the alleged constitutional violation occurred on September 11, 2019, and Kunkle didn't file this lawsuit until October 2021. (ECF 108 at 3-5; ECF 112 at 3-5). Kunkle again argues this claim didn't accrue until August 2020, when he received the Clerk's Record and learned of Deputy Prosecuting Attorney Napier's involvement in the search. (ECF 117 at 3-4).

Here, for the same reasons discussed above, the undisputed facts show this claim accrued no later than September 24, 2019, and Kunkle didn't file this lawsuit until October 2021. Because Indiana has a two-year statute of limitations for personal injury claims, the undisputed facts show this claim is time-barred. Summary judgment is therefore warranted in favor of the defendants on this claim.

### C. Fourteenth Amendment Claim against Jail Officer Holcomb

Kunkle is proceeding against Jail Officer Holcomb "for placing him in disciplinary segregation for over 200 days between November 2018 and November 2019 without due process of law in violation of the Fourteenth Amendment[.]" (ECF 39 at 9).

At the outset, Jail Officer Holcomb argues Kunkle's claim is untimely to the extent he alleges he was placed in disciplinary segregation at any point prior to October 5, 2019, as he filed this lawsuit on October 4, 2021. (ECF 112 at 5-6). Specifically, Jail Officer Holcomb argues Kunkle was on lockdown at various points between November 2018 and November 2019, but his claim is only timely as to a lockdown that occurred between October 24, 2019, and November 12, 2019. *Id.* In his response, Kunkle concedes his claim is only timely as to his lockdown that occurred between October 24, 2019, and November 12, 2019. ECF 127 at 5-6. The Court therefore accepts as undisputed that Kunkle's Fourteenth Amendment claim is only timely as to the lockdown that occurred between October 24, 2019, and November 12, 2019.

As to the merits, Jail Officer Holcomb argues summary judgment is warranted in his favor because he was not personally involved in placing Kunkle on lockdown between October 24, 2019, and November 12, 2019. (ECF 112 at 14-15). Specifically, Jail Officer Holcomb attests that Kunkle was moved to a disciplinary segregation pod on October 24, 2019, at the discretion of Jailer Zachary McGuigan, who imposed a 14-day lockdown because he believed Kunkle was responsible

7

for flooding a jail pod. (ECF 113-1 at 9, 13). Jail Officer Holcomb attests that this lockdown was imposed solely by Jailer McGuigan and that he did not participate in and was not responsible for the decision to impose the lockdown. *Id.* at 9. While on lockdown in 50 pod, Kunkle was locked in his cell 23 hours per day and was offered an hour out every day, which he sometimes refused. *Id.* at 2; (ECF 98 at 82-83). Inmates in 50 pod are permitted to have their personal belongings, including books, hygiene materials, and religious materials, though inmates on disciplinary lockdown may not have their commissary food. (ECF 113-1 at 3).

In his response, Kunkle argues he never flooded the jail pod, and was held in disciplinary segregation without any hearing or opportunity to defend against the accusation. (ECF 127 at 9). He argues Jail Officer Holcomb was the "chief jail officer who had the authority to release Kunkle" once he became aware of his segregation. *Id.* In support of this assertion, Kunkle cites to his deposition testimony, where he testified that whenever he asked Jail Officer Holcomb why he was being held in disciplinary segregation, Jail Officer Holcomb responded with "smart-aleck" remarks such as "you know why you're here." (ECF 98 at 76-77, 93).

"Section 1983 creates a cause of action based upon personal liability and predicated upon fault." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Id.* A defendant cannot be liable without "a showing of direct responsibility for the improper action[.]" *Id.* Put otherwise, individuals will only be liable for their own misconduct, unless they are responsible for creating the peril that leads to the constitutional violation. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

Here, Jail Officer Holcomb has provided undisputed evidence that the decision to place Kunkle in disciplinary segregation was made by Jailer McGuigan, not Jail Officer Holcomb. Jail

8

Officer Holcomb cannot be held liable for Jailer McGuigan's actions based on a theory of respondeat superior. *See Burks*, 555 F.3d at 596 (there is no general respondeat superior liability under 42 U.S.C. § 1983). Kunkle provides no evidence aside from his own speculation that Jail Officer Holcomb was personally involved in the decision to place him in disciplinary segregation, and his testimony regarding Jail Officer Holcomb's "smart-aleck" remarks doesn't show Jail Officer Holcomb participated in or was responsible for placing him on lockdown. Because there's no evidence Jail Officer Holcomb was personally involved in any violation of Kunkle's constitutional rights, summary judgment is warranted in his favor on this claim.

Summary judgment is, additionally, warranted in favor of Jail Officer Holcomb because Kunkle cannot establish a due process violation. When the lockdown began on October 24, 2019, he had already been convicted and sentenced, which means he was not entitled to any due process before being placed on this particular lockdown. *See State v. McGraw*, No. 50D01-1811-F3-000041 (Marshall Super. Ct. decided Oct. 10, 2019), available at mycase.in.gov. For a convicted prisoner, due process protections are triggered only when a transfer to more restrictive housing results in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "When an inmate is placed in conditions more restrictive than those in the general prison population . . . his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013).

Kunkle spent fewer than three weeks in lockdown. Three weeks is not a significantly long period of restriction. *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (prisoner who was in segregation for six months did not allege a liberty interest, because "relatively short terms of

segregation rarely give rise to a prisoner's liberty interest, at least in the absence of exceptionally harsh conditions"); *Smith v. Akpore*, 689 F. App'x 458, 459-60 (7th Cir. 2017) (no liberty interest in four months' combined investigative and disciplinary segregation). The conditions Kunkle faced while on lockdown, while more restrictive than those in general population, do not appear "unusually harsh." *Earl*, 718 F.3d at 691; *see also Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (harsh conditions in segregation "did not greatly exceed what a prison inmate could expect from confinement generally" and thus did not trigger a liberty interest). The undisputed facts show that Kunkle did not have a liberty interest in avoiding the short-term lockdown and therefore cannot prevail on a due process claim.

## CONCLUSION

For these reasons, the Court:

(1) **GRANTS** Deputy Prosecuting Attorney Napier's motion for summary judgment (ECF 107);

(2) **GRANTS** the County Defendants' motion for summary judgment (ECF 111); and

**DIRECTS** the clerk to enter judgment in favor of the defendants and against Micah R. Kunkle and to close this case.

SO ORDERED on September 6, 2024.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT
